UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAVON DENZEL FORD,

                   Plaintiff,

      -against-

ARAMARK, WESTCHESTER COUNTY, and
KEVIN CHEVERKO,

                   Defendants.

18-cv-2696 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

Plaintiff Kavon Denzel Ford ("Plaintiff"), proceeding *pro se*, commenced this action on March 27, 2018, pursuant to 42 U.S.C. §§ 1983, 1985, 1997e, for alleged constitutional violations of the Fifth, Eighth, and Fourteenth Amendment. (Compl., ECF No. 2, ¶¶ 8-9.) Plaintiff asserts claims against Defendants Aramark Correctional Services ("Aramark"), LLC, Westchester County ("Westchester"), and Kevin Cheverko ("Cheverko"), alleging that (1) Aramark and Westchester failed to train and/or supervise its employees and maintained customs and policies that violated various constitutional rights, (2) Aramark and Westchester conspired together to force Plaintiff to purchase items through Aramark's commissary operation, and (3) Cheverko failed to train and/or supervise his employees related to the fixing prices of commissary items and fire safety inspections. (*Id.* at 13-16.)

Presently before the Court are Defendants' motion to dismiss the Complaint. (ECF Nos. 43 & 50.) For the following reasons, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true for purposes of this motion.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/23/2020

1

From August 19, 2017 to January 5, 2018, Plaintiff was detained with the Westchester County Department of Corrections (the "Jail").[1] (*Id.* ¶¶ 4, 64.) During his stay, Plaintiff allegedly encountered a deluge of issues at the Jail related to (1) the Jail's food services and hygiene (*id.* ¶¶ 22, 24-26, 42, 54-57); (2) the Jail's commissary[2] (*id.* ¶¶ 23, 27-29, 37, 41, 43-45); (3) mail handling and tampering (*id.* ¶¶ 30, 52-53); (4) the provision of legal supplies, which, in turn, "frustrat[ed] access to the Court system" (*id.* ¶¶ 31-34, 38-41); (5) the Jail's failure to handle grievances (*id.* ¶ 35); (6) laundry services (*id.* ¶ 36); (7) the Jail's holding cell temperatures (*id.* ¶ 47); (8) facility sanitation (*id.* ¶ 51); and (9) fire and safety procedures (*id.* ¶¶ 58-63). In general, Plaintiff attributes these issues to, among other things, Westchester and Aramark's respective "custom[s] and polic[ies]" (*see, e.g.*, *id.* ¶¶ 22, 24-27, 29, 35-36), Westchester and Aramark's "agreements" and/or conspiracies between each other (*see, e.g.*, *id.* ¶¶ 38-45), Westchester and Aramark's failure to supervise the facilities and their respective employees and/or establish proper procedures (*see, e.g.*, *id.* ¶¶ 50-51, 54-58), and Cheverko's failure to adopt certain policies within the Jail (*see, e.g.*, ¶¶ 58-63). Below, the Court briefly recounts the issue Plaintiff specifically encountered at the Jail.

To begin, every day during his detention, Plaintiff alleges that he was served cold, contaminated, and/or improperly portioned food. (*Id.* ¶ 64.) For example, on September 5, 2017, Plaintiff approached the food wagon at the 2 North West housing area of the facility, grabbed a tray of food, and noticed that the tray was cold. (*Id.* ¶ 65.) While Plaintiff "sat in depression to eat his food," he noticed long strands of hair inside his meal, causing him to discard the food and write a grievance. (*Id.* ¶ 65; *see also id.* Ex. D at ECF No. 2 pp. 34-35.) Later, on September 27, 2017, Plaintiff approached the same food wagon for breakfast, and upon grabbing his food tray,

---

[1]   Although Plaintiff does not name the specific facility in his Complaint, and consistently refers to the "Westchester County Department of Corrections" when describing his location, Defendants indicate that Plaintiff was confined at Westchester County Jail during the relevant period of this action. (*See* Defs. Mem. of Law in Support of Mot. to Dismiss Food-Based Claims ("Defs. Food Mot."), ECF No. 50, at 5.)

[2]   As part of this set of allegations, Plaintiff appears to fault Westchester for allowing a "private operation" within its facilities. (Compl. ¶¶ 48-49.)

he noticed that the tray had a "very small amount of food" and contained "old food residue everywhere." (*Id.* ¶ 66.) After throwing away the food, Plaintiff then "issue[d] a grievance." (*Id.*; *see also id.* Ex. D at ECF No. 2 pp. 36-37.)

A few months later, on November 3, 2017, Plaintiff was served food that was "ice cold with hair and little stones mixed inside" it. (*Id.* ¶ 67.) In shock and disgust, Plaintiff threw the food away and "issue[d] a grievance." (*Id.*; *see also id.* Ex. D at ECF No. 2 pp. 38-39.) Then, on November 29, 2017, Plaintiff received "very small" portion of food on a food tray that contained "residue of the breakfast served earlier in the day," which was "dried up and stuck to the tray." (*Id.* ¶ 68; *see also id.* Ex. D at ECF No. 2 pp. 39-40.) Finally, on December 16, 2017, Plaintiff alleges that he received lunch and dinner trays with food that was "not properly portioned" and contained "hair." (*Id.* ¶ 69.) The food was also cold and "not properly served or cooked." (*Id.*; *see also* Ex. D at ECF No. 2 pp. 41-42.) Plaintiff maintains it was Westchester and Aramark's "custom and policy" of using, and/or agreement to use, horrible food conditions to force detainees to purchase goods at inflated prices from the Jail's (1) commissary operation and (2) care package system. (*Id.* ¶¶ 26-27, 42, 44.)

Between November 1, 2017 to January 5, 2018, Plaintiff further alleges various issues with the temperature of his holding cell and contends that Defendants failed to address his concerns. Specifically, on November 21, 2017, Plaintiff was forced to sleep in a cell "with no heat" and the "ventilation system blowing cold air" during the winter. (*Id.* ¶¶ 70-71.) As result, Plaintiff wrote a grievance. (*Id.* ¶ 71; *see also id.* Ex. D at ECF No. 2 pp. 43-44.) This issue repeated itself again on December 8, 2017, when Plaintiff contends that his cell's ventilation system continued to blow "cold air." (*Id.* ¶ 72.) Again, Plaintiff wrote a grievance after he was not given extra blankets. (*Id.*; *see also id.* Ex. D. at ECF No. 2 pp. 44-45.) This issue persisted through December 26, 2017,

causing Plaintiff to wonder why no one had responded to his grievance. (*Id.* ¶ 73.[3]) Plaintiff contends that, by this time, he had been in his cell "shivering for weeks with no heat and cold air blowing through the vents." (*Id.*) According to Plaintiff, it was Westchester's custom or policy to keep temperatures low and to activate cold air conditioning in the winter. (*Id.* ¶ 47, 83.)

As a result of the cold air conditioning, Plaintiff reports that he was provided "a dirty blanket and sheets" that were "not properly cleaned." (*Id.* ¶¶ 70, 74.) He wrote grievances related to this issue on November 3, 2017 and December 5, 2017. (*Id.* Ex. D at ECF No. 2 pp. 46-47.) These blankets allegedly caused "rashes and breakouts." (*Id.* ¶ 36.)

Plaintiff also alleges that, between the period of August 28, 2017 and January 5, 2018, his cell had a "broken fire sprinkler." (*Id.* ¶¶ 70, 75.) Specifically, on September 11, 2017 Plaintiff noticed that the first sprinkler was "disabled." (*Id.* ¶ 76.) Out of "fear and shock," he notified the officer on duty that his cell did not have an operative fire sprinkler and requested that he be removed. (*Id.*) The officer on duty, however, ignored Plaintiff's request, which led Plaintiff to write another grievance. (*Id.*; *see also id.* Ex. D at ECF No. 2 p. 48.)

The Complaint then turns to Plaintiff's concerns about the Jail's charging for materials used to prepare legal matters. (*Id.* ¶¶ 77.) According to Plaintiff, from September 11, 2017 through January 5, 2018, the Jail charged Plaintiff for paper, at a rate of 10 cents per page, which he intended to use to prepare his legal matters. (*Id.* ¶ 77.) Furthermore, from August 28, 2017 through January 5, 2018, Plaintiff alleges that he was "not provided legal envelops at the law library," and was instead forced to purchase legal envelops from the commissary. (*Id.* ¶ 80 & Ex E at ECF No. 2 at 55, ECF No. 2-1 at 1.) Plaintiff maintains that Westchester and Aramark's charging for these items is part of an "agreement" to illegally sell legal supplies and paper that would otherwise be

---

[3]  Plaintiff does not appear to have a grievance dated December 26, 2017 listed for this issue, although there is a grievance dated November 26, 2017. (*See* Compl. Ex. D at ECF No. 35 pp. 45-46.)

provided for free and cause an economic burden on inmates seeking to prepare for legal matters. (*Id.* ¶¶ 38-40, 43.)

Although these particular set of allegations are difficult to follow, Plaintiff next seems to contend that that he experienced mail tampering during his detention. (*Id.* ¶ 78.) Specifically, on December 12, 2017, he "received a certified mail receipt return card in the mail for an item sent to" Westchester County Supreme Court, even through the mail had not yet been "processed by [] USPS." (*Id.* ¶ 78; *see also id.* Ex. F at ECF No. 2-1 at 4-5.) This caused Plaintiff to write a grievance. (*Id.*) Later, in a separate grievance written on December 28, 2017, Plaintiff claimed he did not receive any certified mail receipt related to his shipment made on December 15, 2017. (*Id.* ¶ 79; *see also id.* Ex. F at ECF No. 2-1 at 8-9.)

## LEGAL STANDARD

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In fact, courts must interpret the *pro se* plaintiff's pleadings "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted).

Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

**DISCUSSION**

## I. Exhaustion

Defendants move to dismiss the complaint on the basis of Plaintiff's alleged failure to exhaust his administrative remedies. (*See* Defs. Mem. of Law in Support of Mot. to Dismiss Non-Food Claims ("Defs. Non-Food Mot."), ECF No. 43, at 4-7; Defs. Food Mot. at 10-12.) Upon initiating this action, Plaintiff attached to the Complaint a certification that he "exhausted all administrative remedies by filing multiple institutional grievances that went unanswered." (Compl. at 17.) Plaintiff supported his assertion by providing various grievances referenced in his Complaint. (*See id.* Ex. D & F.) Notably, however, those grievances contain no signature acknowledging receipt by any "Receiving Staff" at the Jail. (*Id.*) For this reason, Defendants argue that it is clear from the face of the complaint and its attached documents that plaintiff failed exhaust his administrative remedies. (*See* Defs. Non-Food Mot. 6; Defs. Food Mot. at 10-11.) Although the question is close, the Court ultimately disagrees.

Under the Prison Litigation Reform Act ("PLRA"), inmates are precluded from filing an action "with respect to prison conditions under [42 U.S.C. § 1983] . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The "exhaustion requirement applies all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

This "language is 'mandatory,'" meaning that "[a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative

remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Moreover, PLRA contemplates "proper exhaustion," meaning an inmate must use "all steps that [the prison grievance system] holds out" and do so "*properly* (so that the [prison grievance system] addresses the issues on the merits." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). In other words, to satisfy the exhaustion requirement, an inmate must use all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007)); *Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004).

Notwithstanding the above, an inmate need not exhaust administrative remedies if those remedies are unavailable. *Hydara v. Burger*, No. 14-CV-1415 (KMK), 2018 WL 1578390, at *4 (S.D.N.Y. Mar. 29, 2018); *see also Williams v. Annucci*, No. 16-CV-7288 (NSR), 2018 WL 3148362, at *7-8 (S.D.N.Y. June 27, 2018). An administrative remedy is functionally unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60. The Second Circuit has explained that, where a prisoner provides a grievance to a correctional officer who never files it, an administrative remedy can be "unavailable" if the regulations "do not adequately outline the process to appeal or otherwise exhaust administrative remedies." *Williams*, 829 F.3d at 124.

Notably, exhaustion is an affirmative defense, not a pleading requirement. Thus, inmates need not "specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Nor must an inmate plead exhaustion with particularity. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Instead, it is a defendant's burden to demonstrate a

lack of exhaustion.  *Colón v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 15 Civ. 7432 (NSR),

2017 WL 4157372, at *5 (S.D.N.Y. Sept. 15, 2017) (citing *Key v. Toussaint*, 660 F. Supp. 2d 518,

523 (S.D.N.Y. 2009)).  A district court may not dismiss a complaint for failure to exhaust

administrative remedies unless "nonexhaustion is clear from the face of the complaint."  *Ackridge

v. Aramark Corr. Food Servs.*, No. 16-CV-6301 (KMK), 2018 WL 1626175, at *9 (S.D.N.Y. Mar.

30, 2018) (quoting *Lovick v. Schriro*, No. 12 Civ. 7419(ALC)(RLE), 2014 WL 3778184, at *4

(S.D.N.Y. July 25, 2014)).

Here, nonexhaustion is not clear from the face of Plaintiff's Complaint.  Although it is true

that the grievances that Plaintiff has attached are unsigned, he has explained that "the grievances

were [intentionally] never filed by the receiving officials," (Pl. Mem in Opp. to Defs. Mot. to

Dismiss, ("Pl. Opp."), ECF No. 48, at 3), an inference that is supported by allegations in the

Complaint.  At bottom, accepting the allegations of the Complaint as true and construing the

pleadings in a liberal fashion, it appears to the Court that Plaintiff has alleged a situation where the

Jail's personnel may have rendered the grievance process unavailable to Plaintiff.  *See Williams*,

829 F.3d at 124.

The above conclusion would not be altered by the Court's consideration of the facts

contained in the Affidavit of Christopher Roberts (ECF No. 45) and its supporting documentation.

Construing the evidence offered by Defendants in a light most favorable to Plaintiff and drawing

all favorable inferences, as this Court would do on a motion for summary judgment, *see Fincher

v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010), Defendants may have only

raised a question of fact about whether Plaintiff failed to exhaust his administrative remedies.  As

there is clear "ambiguity in the record as to the circumstances surrounding [Plaintiff's] failure to

exhaust, the Court agrees that it would be more prudent to rule on the exhaustion issue on a more

fully-developed record." *See Simmons v. Cripps*, No. 12 Civ. 1061(PAC)(DF), 2013 WL 1285417, at *3 (S.D.N.Y. Mar. 28, 2013).

Whether Plaintiff will be able to maintain this allegation after discovery is yet to be seen. But, at this time, Defendants' motion to dismiss based on Plaintiff's failure to exhaust must be DENIED.

## II. <u>Merits</u>

### A. Plaintiff's Section 1983 Claims

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Paterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York.*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. bell*, 592 F.3d 121, 127 (2d Cir. 2010).

In his Complaint, Plaintiff broadly alleges a laundry list of alleged constitutional violations that he purportedly experienced while confined at the Jail. These violations include (1) poor conditions of confinement, (2) the deprivation of alleged state-created liberty interests, (3) Jail staff's mail tampering and charging for legal envelops, *i.e.* a denial of access to Court claims, and (4) the Jail staff's unresponsiveness to Plaintiff's grievance. (Pl. Opp. 7-10.) The Court addresses these four broad categories below.

### 1. Conditions of Confinement

Plaintiff does not explicitly state in his Complaint or Opposition whether he is a detainee or inmate.  Regardless of his classification, however, the Constitution requires that prison officials "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," whereas an inmate's claims arise under "the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  In either case, to set forth a § 1983 claim for conditions of confinement, a plaintiff must show that an individual "acted with deliberate indifference to the challenged conditions." *See Sanders v. City of New York,* No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018).  This deliberate indifference test contains an objective prong and a subject prong. *Darnell*, 849 F.3d at 29.

Under the debilitate indifference test, "[t]he objective prong is the same under either [the Eighth or Fourteenth] analysis: It requires that the deprivation at issue be, 'in objective terms, sufficiently serious.'" *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *9 (S.D.N.Y. Sept. 18, 2019).  A plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30. "There is not 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* at 29 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).

Conversely, the subjective prong differs between the Fourteenth and Eighth Amendment analyses.  Under the Eighth Amendment, a convicted prisoner must show that a correction officer "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety; the official must both [have been] aware of facts from which the inference could [have been] drawn that a substantial

risk of serious harm exists, and he must [have] also draw[n] the inference." *Farmer*, 511 U.S. at 837. On the other hand, under the Fourteenth Amendment, . a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Strange v. Westchester Cty. Dep't of Corr.*, No. 17-CV-9968 (NSR), 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (internal quotations omitted). This standard is "defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts . . . have subjected the detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 30.

Here, a review of the Complaint indicates that Plaintiff has alleged constitutional deprivations related to (a) cold and contaminated food he was served at the Jail (Compl. ¶¶ 65-69), (b) jail cell temperatures during the months of November 2017 to January 2018 (*id.* ¶¶ 70-73), (c) the dirty blankets he was provided during his stay (*id.* ¶ 74, 100); and (d) the Jail's failure to include functioning fire sprinklers in his cell (*id.* ¶¶ 59-63, 76). The Court addresses each of these conditions below.

### a. Cold and Contaminated Food

The Constitution "require[s] that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981)). Courts have held that "allegations that a prisoner was served food contaminated or tainted by foreign objects" may satisfy the objective prong of the deliberate indifference test. *See Crispin v. Westchester Cty.*, No. 18 CV 7561 (VB), 2019 WL 2419661, at *3 (S.D.N.Y. June 10, 2019) (quoting *Ballard v. Lane*, No. 18-cv-1721 (AJN), 2019 WL 1129158, at *2 (S.D.N.Y. Mar. 12,

2019)). Conversely, allegations that meals are "'small,' 'uneven,' or 'minimum'" are not enough to adequately plead a sufficiently serious condition of confinement. *Pagan v. Westchester Cty.*, No. 12 Civ. 7669(PAE)(JCF), 2014 WL 982876, at *17 (S.D.N.Y. Mar. 12, 2014). A key consideration is whether the provision of food ultimately poses an "imminent danger to the inmate's health and well-being." *Harris v. Ashlaw*, No. 9:07-CV-0358 (LEK/DEP), 2007 WL 4324106, at *5 (N.D.N.Y. Dec. 5, 2007). Further, for a claim related to food conditions to survive, a plaintiff must allege that he or she suffered a "distinct and palpable injury." *See M.F. v. Reish*, No. 95 CIV. 4904 (SAS), 1996 WL 345953, at *4 (S.D.N.Y. June 21, 1996) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)); *see also Calvin v. Schmitt*, No. 15 CV-6584 (NSR), 2017 WL 4280683, at *5 (S.D.N.Y. July 7, 2017) ("In food tampering claims a plaintiff must allege that he suffered an actual injury, 'the mere allegation of food tampering alone [ ] is insufficient to establish a claim under the Eighth Amendment.'").

Here, Plaintiff alleges that he received "cold food, contaminated food, and food not properly portioned on dirty feeding trays" between August 19, 2017 to January 5, 2018. (Compl. ¶ 64.) Specifically, Plaintiff points to four instances where he received food that was either served with hair and stones mixed in, served cold, "not properly cooked," or placed on dirty food trays. (*Id.* ¶¶ 65-69.) But even assuming the nutritional inadequacy and contamination of the food, Plaintiff does not plead a "distinct or palpable" injury or illness related to this contamination. Instead, he notes in these four instances that he simply threw out the food and wrote a grievance. (*Id.*) Therefore, as presently pleaded, Plaintiff's food contamination and tampering claims must fail. *See Rasheen v. Adner*, 356 F. Supp. 3d 222, 241 (N.D.N.Y. 2019) (dismissing plaintiff's Eighth Amendment claim related to contaminated food because, while plaintiff made "general allegations regarding potential health implications, he fail[ed] to allege that he actually suffered

any injury as a result of ingesting contaminated food"). Defendants motion to dismiss this claim is GRANTED, without prejudice.

### b. Jail Cell Temperatures

A Constitutional claim "may be established by proof that [an] inmate was subjected for a prolonged period to bitter cold." *Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001). There is no "'bright-line durational or severity threshold' that a deprivation must meet." *Collins v. Fischer*, No. 15-CV-103 (KMK), 2018 WL 1626528, at *7 (S.D.N.Y. Mar. 30, 2018) (quoting *Darnell*, 849 F.3d at 32). "Cases where plaintiffs have succeeded on those claims . . . involve allegations of exposure to freezing or near-freezing temperatures for a more prolonged period of time than eleven hours." *Brims v. Ramapo Police Dep't*, No. 11 CV 712(VB), 2011 WL 7101233, at *5 (S.D.N.Y. Dec. 23, 2011).

Here, Plaintiff alleges that between November 1, 2017 to January 5, 2018, he was forced to sleep in a cell with no heat and a "ventilation system blowing cold air." (Compl. ¶ 70.) Despite what he alleges were "freezing temperatures," Plaintiff maintains that, for warmth, all he was provided was "one blanket" that was "not properly cleaned." (*Id.* ¶¶ 70, 73-74.) Liberally construing the pleadings to raise the strongest argument possible, Plaintiff has plausibly alleged a sufficiently serious condition that rises to the level of a constitutional violation. *See Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir 1988) (concluding that exposure to "bitter cold" temperatures for a three-month period may amount to a constitutional violation).

Moreover, Plaintiff has adequately pleaded the requisite *mens rea* for his claim. By drawing all reasonable inferences in Plaintiff's favor, the Court can discern from the Complaint that the unidentified jail officials seemingly acted with the requisite deliberate indifference to these serious conditions. Indeed, Plaintiff alleges that he submitted grievances outlining the conditions, which were ignored. (*See, e.g.*, Compl. ¶ 73.) Whether Plaintiff ultimately would be classified as a detainee or inmate, such conduct, accepted as true and liberally construed, gives rise to an

13

inference that Jail staff had knowledge of, but nevertheless disregarded, the conditions to which they subjected Plaintiff. As such, the Court DENIES Defendants' motion to dismiss Plaintiff's cell temperature claims at this juncture.

### c. Dirty Blankets

In general, an inmate or detainee's "personal hygiene concerns" may implicate the Constitution. *See Sharpe v. Taylor*, No. 9:05-CV-1003 (GTS/GHL), 2009 WL 1743987, at *11 (N.D.N.Y. June 18, 2009) (citing *Blissett*, 66 F.3d at 537) (concluding that, liberally construed, plaintiff's allegation that he was provided dirty clothing washed with dirty mop heads could establish a conditions of confinement claim). However, "[a] skin rash is generally insufficient to meet the objective requirement of a sufficiently grave and serious condition." *Yancey v. Robertson*, No. 9:17-CV-0381 (BKS/CFH), 2018 WL 7114888, at *5 (N.D.N.Y. Dec. 7, 2018) (quoting *Purdie v. City of New York*, No. 11-CV-5802 (PKC), 2011 WL 1044133, at *3 (S.D.N.Y. Mar. 15, 2011)); *Cooper v. Orange Cty.*, No. 15 CV 10075 (VB), 2017 WL 3309754, at *5 (S.D.N.Y. Aug. 2, 2017) ("Plaintiff alleges that he developed a rash, the only stated symptoms of which were an undescribed level and duration of pain, and eventually scarring. Plaintiff does not allege that the rash caused him to suffer chronic and substantial pain or that it significantly affected his daily activities. Thus, plaintiff fails to allege a sufficiently serious medical condition to satisfy the seriousness of deprivation requirement."); *see also Dolberry v. Levine*, 567 F. Supp. 2d 413, 418 (W.D.N.Y. 2008) ("Although plaintiff does allege that he suffered a skin rash due to the lack of showers, that is a *de minimis* injury that does not give rise to a claim."),

In this case, Plaintiff has alleged that he was provided with a dirty blanket that caused him to suffer "severe skin rashes and breakouts." (Compl. ¶¶ 70, 74, 100.) But Plaintiff does not allege, for example, anything about whether he was in pain, how long he was in pain (if at all), or if he suffered any eventual scarring. In fact, beyond his characterization of the rash as "severe," Plaintiff's only other word on the topic is that he is "awaiting an appointment with a dermatologist

for further diagnosis." (Pl. Opp. 5-6.) The Court is sympathetic to the fact that Plaintiff may have been uncomfortable as a result of these alleged hygienic issues. Still, even when liberally construed, Plaintiff's allegations do not set forth a sufficiently serious condition of confinement, particularly given the minimal injury sustained. *See Thurmond v. Thomas*, No. 18-CV-409 (KMK), 2019 WL 1429559, at *6 (S.D.N.Y. Mar. 29, 2019) (finding that Plaintiff's allegation of a "skin rash" that caused him "serious pain," as well as "bleeding and scarring," was "not a medical condition that [gave] rise to an Eighth Amendment deliberate indifference claim" premised on failure to provide medical treatment); *Dolberry*, 567 F. Supp. 2d at 418 (explaining, on summary judgment, that a skin rash plaintiff suffered because he was deprived access to showers and cleaning supplies for several weeks did not rise to level of a constitutional violation); *cf. Sharpe*, 2009 WL 1743987 at *11 (concluding that plaintiff had stated a condition of confinement claim where he was provided dirty clothing that was washed with dirty mop heads, and he alleged that his primary care physician was "sufficiently concerned about plaintiff's 'contact with pernicious chemicals"). As such, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim related to the dirty blanket he received for his cell.

### d.  *Disabled Fire Sprinkler*

"Prison inmates have a constitutional right to adequate fire safety[] so they are not exposed to an unreasonable risk of serious damage to their future health." *Garcia v. Fischer*, No. 13 CV 8196(VB), 2016 WL 297729, at *8 (S.D.N.Y. Jan. 22, 2016). Put differently, the "absence of adequate and reliable fire protection [in prisons] can give rise to a Fourteenth Amendment Due Process claim." *Shine v. Hofman*, 548 F. Supp. 2d 112, 119 (D. Vt. 2008). The key inquiry remains whether the violation posed "an unreasonable risk of serious damage to [an inmate's] future health." *Garcia*, 2016 WL 297729 at *8. Here, Plaintiff merely alleges that he was placed in a cell with a disabled fire sprinkler. Plaintiff does not otherwise establish that the Jail lacked adequate and reliable fire protection, nor does he allege any conditions that give rise to an inference

of an unreasonable risk of serious damage to his future health.  The Court GRANTS Defendants'

motion to dismiss Plaintiff's fire-sprinkler claims, without prejudice.

### 2. Deprivation of Liberty Interests

Under the Fourteenth Amendment, a state shall not "deprive any person of life, liberty, or

property, without due process of law." U.S. Const. amend. XIV.  For the due process requirements

of the Fourteenth Amendment to apply, a plaintiff must have been deprived of, as relevant here, a

protected liberty interest. *White Plains Towing Corp. v. Patterson,* 99 F.2d 1049, 1061-62 (2d Cir.

1993) ("In order to succeed on a claim of deprivation of procedural due process, a plaintiff must

establish that state action deprived him of a protected property or liberty interest.").  A protected

liberty interest "may arise from two sources—the Due Process Clause itself and the laws of the

States." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (quoting *Hewitt v. Helms*, 459

U.S. 460, 466 (1983)).  The Due Process Clause "protect[s] no more than 'the most basic liberty

interests in prisoners.'" *Smart v. Goord*, 441 F. Supp. 2d 631, 639-40 (S.D.N.Y. 2006) (quoting

*Hewitt*, 459 U.S. at 467). Conversely, a state-created liberty interest exists when a statute or

regulation (1) "articulate[s] specified 'substantive predicates' which limit the discretion of state

officials"; and (2) "employ[s] 'explicitly mandatory language,' requiring state officials to follow

those substantive predicates." *See Klos v. Haskell*, 48 F.3d 81, 87 (2d Cir. 1995).

In his Complaint and Opposition, Plaintiff appears to allude to three primary, state-created

"liberty interests" of which Defendants purportedly deprived him: (a) a liberty interest reasonably

priced commissary operation at the Jail, (b) a liberty interest in fire safety, and (c) a liberty interest

in his condition of confinement.  (Pl. Opp. 6-7, 9-10.)  The Court addresses these conditions below.

#### a.  The Jail's Commissary

Plaintiff argues in his Opposition that New York State regulation 9 N.Y.C.R.R. 7016.1

provides for a state-created liberty interest that is protected by the Due Process Clause of the United

States Constitution.  (Pl. Opp. 6-7.)  Defendants contend that no such liberty interest was created

by the regulation.  (Defs. Reply in Support of Mot. to Dismiss Food Claims, ECF No. 52, at 3-4.)

The Court agrees.

> That New York regulation states, in relevant part, that

> *[i]n the discretion* of the sheriff or chief administrative officer, a commissary *may* be established, maintained and operated for the purpose of making available, for sale to prisoners, items deemed proper by such officials and consistent with the health and welfare of the prisoners and the security and general operation of the facility concerned.

9 N.Y.C.R.R. 7016.1(a) (emphasis added).  The regulation then provides "the sheriff, or official in charge," with the discretion to fix prices "to the extent the commissary operation will be self-supporting and will provide a modest return above costs."  *Id.* 7061.1(b).  Given this language, it is clear that the provision of a commissary to detainees and inmates is intended to be discretionary in nature.  In fact, the only "limitation" that is found in the regulation is that commissary accounts are subject to a "periodic audit . . . by the office of the county auditor, county treasurer or other county officer in a similar capacity."  *Id.* 7016.1(d).

There is plainly nothing in this regulation that could be construed as either (1) a substantive predicate from the state that limits the discretion of state officials or (2) explicitly mandatory language that state officials must follow.  In fact, in the context of inmates challenging their keeplock confinement, courts have frequently held that the loss of commissary privileges does not implicate any protected liberty interest under New York law.  *See, e.g.*, *Waters v. Prack*, No. 9:13-CV-1437 (LEK/DEP), 2017 WL 1239642, at *6 (N.D.N.Y. Feb. 24, 2017), *adopted by*, 2017 WL 1187871 (N.D.N.Y. Mar. 30, 2017) ("The final deprivation alleged by plaintiff to implicate a cognizable liberty or property interest concerns the loss of his telephone and commissary privileges while in SHU confinement.  Such privileges, however, do not constitute protected liberty or property interests."); *Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006) ("Likewise, the loss of phone, package, and commissary privileges does not give rise to a protected liberty interest

under New York law."). The Court concludes there is no state-created liberty interest in a jail or prison's commissary operation.

To the extent Plaintiff maintains that the prices or types of items sold at the commissary violated the Constitution, those claims also fail. Numerous courts have determined that inmates do not have a constitutional right to use a prison commissary, to challenge prices, or to mandate what items are sold. *See, e.g.*, *Mitchell v. City of New York*, No. 10 Civ. 4121(PKC), 2011 WL 1899718, at *2 (S.D.N.Y. May 13, 2011) (dismissing complaint seeking injunctive relief to require commissary to provide sugar free and salt free foods because "there is no constitutional right to access a prison commissary"); *Davis v. Shaw*, No. 08 Civ. 364(NRB), 2009 WL 1490609, at *1 (S.D.N.Y. May 20, 2009) (denying Section 1983 claim premised on commissary's excessively high prices and its failure to offer sugar-free or salt-free foods).

In short, Plaintiff's commissary claims fail as a matter of law. The Court GRANTS Defendants' motion to dismiss these claims, with prejudice.

### b. Fire Safety

Plaintiff's complaint contends that he has a state-created liberty interest in fire safety under 9 N.Y.C.R.R. 7039.4 & 7039.5. (Compl. ¶¶ 91-94.) As already explained, Plaintiff has failed to establish that any fire-safety issues alleged in his Complaint amounted to an unconstitutional condition of confinement. In any event, even assuming, without deciding, that these regulations do amount to a state-created liberty interest, the Complaint does not contain any non-conclusory indication that Plaintiff was in anyway deprived of his alleged liberty interest.[4] The Court GRANTS Defendants' motion to dismiss Plaintiff's fire-safety due process claims.

---

[4]     To be clear, the Court has not identified any authority supporting Plaintiff's proposition. Further, upon a review the applicable regulations—which call for "annual fire and safety inspection[s]," 9 N.Y.C.R.R. 7039.4, and "weekly" "fire hazard" inspections, 9 N.Y.C.R.R. 7039.5(a)-(b), respectively—the Court notes that it is a dubious (at best) proposition that these regulations amount to some sort of liberty interest vested in inmates.

### c. *Conditions of Confinement*

Plaintiff appears to maintain that he has a state-created liberty interest in his conditions of confinement. (Pl. Opp. 9-10.) In support, Plaintiff points to Title 9, Subtitle AA, Ch. I, subch. A of the New York Code of Rules and Regulations—a subchapter that broadly provides for "minimum Standards and Regulations" for county jails and penitentiaries. (*Id.* at 9.) Yet Plaintiff cites no authority to support his position that these "minimum standard" regulations amount to an overarching state-created liberty interest, nor has the Court identified any in its own research. The Court will thus decline to analyze Plaintiff's condition of confinement claims under his proposed liberty interest framework. Indeed, this Court has already considered whether the conditions alleged by Plaintiff amounted to a constitutional violation under the Fourteenth Amendment Due Process Clause, and, in that analysis, it has articulated the standard upon which those claims should be reviewed.

To be sure, an inmate can establish liberty interests his prison conditions in the context of prison disciplinary actions. Such situations typically involve an inmate who was subjected to keeplock confinement after a disciplinary hearing. *See, e.g.*, *Casanova v. Maldonado*, No. 17 CV 1466 (NSR), 2019 WL 3286177 (S.D.N.Y. July 22, 2019). Specifically, an inmate must allege that the challenged disciplinary action imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 482 (1995). This, of course, is not the case here. And, regardless, the Court has not identified any authority couching this liberty interest in the above-cited regulations.

In sum, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim that he was deprived of some broadly defined, state-created liberty interest related to his conditions of his confinement.

### 3. Mail Tampering/Denial of Access to Courts

Liberally interpreting the pleadings, the Court discerns that Plaintiff has alleged that, by virtue of jail official's tampering with his mail and Defendants' policy to charge for paper and envelops, Defendants violated Plaintiff's constitutional right to access the courts. To this end, "[i]nterference with legal mail implicates a prison inmate's rights to access to the courts" as guaranteed by the Fourteenth Amendment. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "To state a claim for denial of access to the courts . . . a plaintiff must allege that the defendant took or was responsible for actions that 'hindered a plaintiff's efforts to pursue a legal claim." *Id.* (alterations and quotations omitted). "[A] plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in *actual injury* to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Tutora v. Gessner*, No. 17-CV-9517(KMK), 2019 WL 1382812, at *5 (S.D.N.Y. Mar. 27, 2019) (quoting *Cancel v. Goord*, No. 00 CIV 2042 LMM, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2011)). In other words, a plaintiff must establish that "the alleged act of deprivation 'actually interfered with his [or her] access to the courts or prejudiced an existing action." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 345 (S.D.N.Y. 2010). Finally, a single, isolated incident of mail interference is not a cognizable claim under § 1983. *Id.* (citing *Govan v. Campbell*, 289 F. Supp. 2d 289, 297-98 (N.D.N.Y. 2003)).

Plaintiff's claims fail. Initially, to the extent it was improper for Defendants to charge Plaintiff for materials he would use in his legal matters, Plaintiff has failed to establish that any of his existing actions were prejudiced by Defendants' conduct. Furthermore, as it relates to Plaintiff's mail-tampering claim, Plaintiff sets forth nothing more than an isolated incident (possibly two) of mail interference, which is simply not enough to state a claim. In any event, he has not pleaded any actual injury suffered by the alleged misconduct. The Court GRANTS Defendants' motion to dismiss Plaintiff's mail tampering claims, without prejudice.

### 4. Grievance Process

Defendants argue that Plaintiff has no constitutional right to the Jail's grievance process. (Defs. Reply in Support of Mot. to Dismiss Non-Food Claims, ECF No. 47, at 3-4.)  The Court agrees.  It is well settled that "[p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *see also Mimms v. Carr*, No. 09-CV-5740 (NGG) (LB), 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011), *aff'd*, 548 F. App'x 29 (2d Cir. 2013) ("It is well-established that prison grievance procedures do not create a due-process-protected liberty interest."); *Avent v. Doe*, No. 9:05-CV-1311 (FJS/GJD), 2008 WL 877176, at *8 (N.D.N.Y. Mar. 31, 2008) ("A violation of the inmate grievance procedures does *not* give rise to a claim under section 1983.").  Therefore, "[t]he refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983."[5] *Njasang Nji v. Heath*, No. 13 Civ. 200(CM), 2013 WL 6250298, at *6 (S.D.N.Y. Dec. 2, 2013) (quoting *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005)).

Here, Plaintiff appears to contend that he was exposed to unconstitutional conditions of confinement based on the Jail's staff's failure to respond to his grievances.  As a violation of inmate grievance procedures does not implicate a colorable Section 1983 claim, any cause of action premised on a failure to respond to grievances must fail.  Defendants motion to dismiss Plaintiff's grievance claims is GRANTED, with prejudice.

---

[5]    To the extent Plaintiff's grievance allegations are, in fact, a claim that he was denied access to courts, the Court reiterates that, taking his allegations as true, the intentional failure of the Jail's staff to process grievances would ultimately make the grievance process "unavailable" to him, thus excusing his compliance with the PLRA.  Plaintiff, in turn, would not have been prevented from filing his action. *Cf. Avent*, 2008 WL 877176 at *9 (explaining how, to the extent plaintiff claimed that defendant's "deliberately fail[ed] to process grievances so that plaintiff [would] later be denied access to courts," his argument failed; there was "no actual injury" that would impact the present lawsuit" given that the alleged conduct would act as an "exception to the exhaustion requirement").

## B. *Monell* Liability of Defendants Aramark, Westchester County, and Kevin Cheverko in his Official Capacity

Plaintiff has sued Aramark,[6] Westchester, and Cheverko (in his official capacity[7]), none of whom may be held liable simply under a *respondeat superior* theory.  *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978).  The Court therefore must assess whether Plaintiff has sufficiently alleged *Monell* liability as it relates to Plaintiff's remaining cell-temperature condition of confinement claim.  For their part, Defendants all contend that Plaintiff has failed to establish *Monell* liability on the face of the complaint.  (Defs. Food Mot. 20-22; Defs. Non-Food Mot. 8-11.)  The Court disagrees

Under *Monell*, a plaintiff must demonstrate "that the municipality itself caused or is implicated in the constitutional violation."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).  This generally requires plaintiff to allege that "(1) an official custom or policy [] (2) subjected [him or her] to (3) a denial of a constitutional right."  *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.").  To establish an official custom or policy, a plaintiff must first allege one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a

---

[6]  Courts that have considered the issue have found that Aramark, in its capacity as a food provider at Westchester County Jail, can be viewed a state actor for purposes of assessing *Monell* liability.  *See, e.g.*, *Pagan*, 2014 WL 982876 at * 23-24.  Regardless, the Court need not flesh this issue out at this time because Aramark has conceded that it is a state actor for purpose of this motion only.  (Defs. Food Mot. 20.)

[7]  A suit against an officer in his official capacity "is not a suit against the official personally, for the real party in interest is the entity."  *Lore v. City of Syracuse*, 670 F.3d 127, 168 (2d Cir.2012).  Nevertheless, as explained below, the only relevant *Monell* claim that has survived Defendants' motion to dismiss is Plaintiff's cell-temperature claims, which do not implicate Cheverko in his official capacity.

supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*White v. Westchester Cty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)). Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

In the Complaint, Plaintiff repeatedly alleges various "customs or policies" that he attributes to Westchester and Aramark, and in other instances, he contends that those two entities failed to train employees. As it relates to his cell-temperature claim, Plaintiff contends that Westchester "maintained a custom and or policy of" maintaining freezing cell temperatures, which, he further elaborates, consisted of setting cell temperatures "very low" and activating the "cold air condition" during the winter. (Compl. ¶¶ 47, 83.) Plaintiff then points to specific facts related to his experience at the Jail, which the Court can reasonably infer was a result of Westchester's alleged "custom or policy." (*See, e.g.*, *id.* ¶¶ 71-73 (detailing Plaintiff's experience in "freezing temperatures" in his cell area).) To further buttress the prevalence of these issues, Plaintiff has even provided a list of witness who attest to the Jail's various, which presumably includes freezing cell temperatures. (*Id.* at Witness Signatures, ECF No. 2 at 19-20.)

Although close, dismissal of his *Monell* claims is not warranted at the motion to dismiss stage. Construing these pleadings liberally, the Court concludes that Plaintiff has plausibly alleged a persistent and widespread practice regarding the freezing temperatures in his holding cell. *See Pagan*, 2014 WL 982876 at *27 (concluding that plaintiff sufficiently alleged custom or policy and/or failure to properly train and supervise where "plaintiffs [] alleged that inadequately trained workers preparing food at the Jail [had] frequently served undercooked food, rotten food, or

inadequate portions"); *see also Jones v. Westchester Cty. Dep't of Corr. Med. Dep't*, 557 F. Supp.

2d 408, 417 (S.D.N.Y. 2008) (declining to dismiss *pro se* plaintiff's *Monell* claims at motion to

dismiss stage because, in part, "Plaintiff has not yet had an opportunity to take the discovery that

will be needed to flesh out any *Monell* claim," but noting that "[i]f Plaintiff's case turns out to be

unique, the *Monell* claim will not survive summary judgment or a directed verdict"). Defendants'

motion to dismiss Plaintiff's *Monell* claim against Westchester related to the freezing temperatures

in his cell is DENIED.[8]

### C. Claims Against Defendant Cheverko in his Individual Capacity

In addition to claims against Cheverko in his official capacity, Plaintiff asserts various

claims against him in his individual capacity. As will be explained, those claims fail.

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional

violations merely because he [or she] held a high position of authority." *Black v. Coughlin*, 76

F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir.

2013). Instead, "a plaintiff must establish a given defendant's personal involvement in the claimed

violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823

F.3d 125, 136 (2d Cir. 2016) (emphasis added) (internal quotation marks omitted), *cert. denied*

*sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016). As the Second Circuit has explained, the

personal involvement of a supervisory defendant may be shown by evidence that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

---

[8]     As the other conditions of confinement claims were dismissed based on the substance of the allegations, the
Court does not address whether Plaintiff sufficiently pleaded *Monell* liability as it relates to those claims.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[9]  Notably, it does not suffice for a plaintiff to "merely recite[] the legal elements of a successful § 1983 claim for supervisory liability." *Dotson v. Farrugia*, No. 11 Civ. 1126(PAE), 2012 WL 996997, at *6 (S.D.N.Y. Mar. 26, 2012) (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)); *accord Samuels v. Fischer*, 168 F. Supp. 3d 625, 636 (S.D.N.Y. 2016) ("[E]ven within the context of the *Colon* framework, 'merely recit[ing] the legal elements of a successful § 1983 claim for supervisory liability . . . does not meet the plausibility pleading standard.'").  "[C]onclusory, unsupported allegations of gross negligence or the existence of a policy are simply insufficient to establish liability of supervisory prison officials under §1983." *Alsaifullah v. Furco*, No. 12 Civ. 2907(ER), 2013 WL 3972514, at *16 (S.D.N.Y. Aug. 2, 2013) (citations and internal quotation marks omitted); *accord McNaughton v. de Blasio*, No. 14 Civ. 221 (KPF), 2015 WL 468890, at *6 (S.D.N.Y. Feb. 4, 2015).

Here, the Complaint alleges that Cheverko (1) "failed to develop and implement written policies and procedures ensuring compliance" with regulations: (2) "failed to conduct an annual fire and safety inspection and failed to maintain on file a copy of the report based on such inspection"; (3) "failed to appoint staff members to conduct regular inspections of all areas"; (4) "failed to conduct fire safety inspections at weekly intervals"; and (5) "failed to ensure that staff members appointed to conduct fire safety inspections have completed a fire safety protection." (Compl. ¶¶ 59-63.)  Plaintiff also appears to allege that Cheverko "failed to perform duties  enjoined upon him" related to the commissary operation.  (*Id.* ¶ 89.)

---

[9]     Although there is a split in authority, "[t]he majority of the district courts [in this circuit] . . . have held that, absent any contrary directive for the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 07, 2017) (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)) (collecting cases).  This Court has already expressed its agreement with that proposition and will apply it with equal force here.  *See Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *11 (S.D.N.Y. Mar. 31, 2018); *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018); *Matteo v. Perez*, No. 16-CV-1837 (NSR), 2017 WL 4217142, at *5 (S.D.N.Y. Sept. 19, 2017).  Because Plaintiff's claims against Cheverko do not relate to allegations of discrimination, the Court will consider all five *Colon* factors.

Here, Plaintiff has failed to assert facts to establish that Cheverko had *any* personal involvement in the alleged constitutional violations he purportedly experienced. To begin, the Complaint lacks any *non-conclusory* allegation that Cheverko (1) was directly involved in any particular violation; (2) was informed of any constitutional violations and failed to act; or (3) created any custom or policy that facilitated the unconstitutional practice or allowed any such policy to continue. Nor has Plaintiff alleged any facts that give rise to an inference that Cheverko was grossly negligent or deliberately indifferent. Rather, even when liberally construing Plaintiff's complaint, it appears that Cheverko has been sued merely because of the "bare fact" that he "occupies a high position" at the Jail, which is plainly insufficient to sustain a claim. *Colon*, 58 F.3d at 874. Indeed, the Complaint even lacks basic facts that allege if (let alone, how) Cheverko was aware of any of the alleged issues or violations at the Jail. *See Perez v. Annucci*, 18 CV 147 (VB), 2019 WL 1227801, at *3 (S.D.N.Y. Mar. 15, 2019) (dismissing claims against commissioner of New York State Department of Corrections where plaintiff alleged that commissioner knew about "widespread excessive force . . . because he allegedly received daily reports" but failed to specify "what type of reports [he] allegedly received, when or how often he allegedly received them, or what the reports allegedly concluded or contained).

Even if the Court had concluded that Plaintiff has sufficiently alleged the substantive claims related to the Jail's commissary and fire safety, the Court nevertheless GRANTS Defendants' motion to dismiss the complaint against Cheverko for failure to allege his personal involvement in any purported constitutional violation.

### D.  Limitations on Relief under PLRA

Under the PLRA, an inmate may not bring an action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This limitation applies to claims alleging constitutional violations, although it "does not restrict a

plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002). Here, it is unclear whether Plaintiff has pleaded any mental or emotional injury. (*Cf.* Pl. Opp. 6 ("Even more problematic for defendants is that plaintiff claims no mental anguish or emotional injury . . . .").) The Complaint is devoid of any allegations of physical injuries that are more than *de minimis*. Accordingly, to the extent Plaintiff seeks compensatory damages related to mental or emotional injuries, those claims are precluded by the language of PLRA. The Court GRANTS Defendants' motion to dismiss Plaintiff's claims for compensatory damages related to mental or emotional injuries, without prejudice. This holding does not reach any punitive or nominal damages Plaintiff may seek for his mental or emotional injuries, if any are, in fact, alleged.

### E. Conspiracy Claims Against Westchester and Aramark[10]

Defendants argue that there is no basis for Plaintiff to maintain his conspiracy claims. (Defs. Food Mot. 17-19.) The Court agrees.

To establish a conspiracy under § 1983, a plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[T]he pleadings must present facts tending to show agreement and concerted action"; conclusory allegations are insufficient. *Banks*

---

[10] Plaintiff also appears to bring a conspiracy claim under Section 1985. (*See* Compl. ¶ 8.) Preliminary, as Plaintiff is "not a federal official and his claims are not related to the participation of witnesses in judicial proceedings," Sections 1985(1) and 1985(2) do not apply. *Morgan v. Dzurenda*, No. 3:14-cv-966(VAB), 2016 WL 6826156, at *5 (D. Conn. Nov. 18, 2016). As it relates to any claims under Section 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Critically, "the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* at 1088. Here, the Complaint lacks any non-conclusory allegation of discriminatory animus underlying the alleged conspiracy or agreement between Westchester and Aramark. To the extent Plaintiff maintains a Section 1985(3) claim, that claim is DISMISSED.

*v. City of White Plains Police*, No. 14 CV 670 (VB), 2014 WL 6642360, at *3 (S.D.N.Y. Oct. 17, 2014). Moreover, "a civil conspiracy claim does not set forth an independent cause of action but rather is sustainable only after an underlying claim has been established." *Gonzalez v. City of New York*, No. 1:18-cv-2197-GHW, 2020 WL 158432, at *4 (S.D.N.Y. Jan. 13, 2020) (quoting *DeMartino v. N.Y.S. Dep't of Labor*, 167 F. Supp. 3d 342, 373 (E.D.N.Y. 2016)). Here, liberally construed, Plaintiff's conspiracy allegations are related to his access to court claims and his commissary claims. (*See* Pl. Opp. 10-12.) As already detailed in this opinion, those claims either fail as a matter of law or have not been adequately pleaded.[11] Because there is no underlying claim to support Plaintiff's conspiracy allegations, the Court GRANTS Defendants' motion to dismiss Plaintiff's conspiracy claims.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED in part and DENIED in part. Plaintiff is granted to leave to file an Amended Complaint as to any claims that have not been dismissed with prejudice. If he chooses to do so, Plaintiff will have until March 9, 2020 to file an Amended Complaint consistent with this order. An Amended Civil Rights Complaint form is attached to this Order. Defendants are then directed to answer or otherwise respond by April 22, 2020.

If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice, and the Complaint (ECF No. 2) will serve as the operative complaint in this action to which Defendants should respond.

---

[11] For the same reason, the purported conspiracy allegation between Aramark and Cheverko must also be dismissed. (*See* Compl. ¶ 96.)

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 43 & 50.

The Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the

address listed on ECF and to file proof of service on the docket.


Dated: January 23, 2020                          SO ORDERED:
White Plains, New York

                                            _____
                                                NELSON S. ROMÁN
                                            United States District Judge

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____
(Include case number if one has been assigned)

**AMENDED
COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes     ☐ No

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                Middle Initial            Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                        State                    Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name       Last Name       Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City       State       Zip Code

Defendant 2:

First Name       Last Name       Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City       State       Zip Code

Defendant 3:

First Name       Last Name       Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City       State       Zip Code

Defendant 4:

First Name       Last Name       Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City       State       Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence:  _____

Date(s) of occurrence:  _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____